Sheila R. BUCKNER, Appellant,

v.

GENERAL MOTORS
CORPORATION, Appellee.

No. 65197.

Supreme Court of Oklahoma.

July 5, 1988.

Marilyn D. Barringer, Oklahoma City, for appellant.

A. Scott Johnson, Holloway, Dobson, Hudson & Bachman, Oklahoma City, for appellee.

KAUGER, Justice.

The questions presented are 1) whether a worker who obtains medical treatment from a physician provided by the employer at the job situs has instituted proceedings under 85 O.S.1981 § 5,[1] thus triggering the threshold requisites for stating a prima facie case for retaliatory discharge, and; 2) whether either of the parties complied with 12 O.S.Supp.1985 Ch. 2, App., District Court Rule 13. We find that: 1) because the term institution of proceedings is broader than the term filing or commencing a claim, the employee stated a prima facie case under 85 O.S. 1981 § 5; and 2) the employer's motion for summary judgment and the employee's response failed to comply with Rule 13, and that there are material questions of fact to be resolved.

## FACTS

The parties do not dispute that during the summer of 1984, Sheila R. Buckner, employee-appellant, was hired on a part-time basis by General Motors, employer-appellee, to work no more than eighty-nine days. On June 15, she signed a statement verifying that she was a college student; that the job she was applying for was strictly temporary; and that she would not gain seniority. On June 26, while lifting a car part from the machine, the worker injured her shoulder. On July 2, she was referred for medical treatment to the plant physicians, who placed her on limited duty. Apparently, because she had accumulated no sick leave benefits, she was given time off without pay. On July 6, 1984, having returned to work voluntarily, the worker reported to the plant's first-aid facilities complaining of pain in her injured shoulder.

At this juncture the employee and the employer differ on the facts. The employer's version is that because the physician on duty could not see the employee immediately the nurse on duty told her to go back to work until she could be seen. The employer asserts that instead of returning to her station, the employee went to the cafeteria. The employee contends that she was merely waiting to be seen by the doctor. It is undisputed that later that day she received a letter notifying her that she was being discharged for loitering. On July 9, 1984, the employee signed her first notice of accidental injury and claim for compensation claim for workers' compensation benefits which was filed on July 11. The worker was awarded workers' compensation benefits, and on October 11, 1984, she filed an action in the district court of Oklahoma County[2] asserting that she had been discharged in retaliation for having instituted a proceeding under the provisions of 85 O.S. 1981 § 5.

The worker testified in a deposition given on May 22, 1985, that she had not consulted an independent physician concerning any of her injuries; that she had received no treatment from the plant physicians other than medication for pain; that after her injury she was physically incapable of doing her work; that she did not receive sick leave nor did she apply for any kind of compensation during the time she was off work; and that after she was fired she was advised by the union's grievance officer that he could not help her seek relief under the collective bargaining agreement with General Motors because she was a probationary employee who had worked less than the thirty day probationary period.

1. The Workers' Compensation Act, 85 O.S.1981 § 5, provides:

 "No person, firm, partnership or corporation may discharge any employee because the employee has in good faith filed a claim, or has retained a lawyer to represent him in said claim, instituted or caused to be instituted, in good faith, any proceeding under the provisions of Title 85 of the Oklahoma Statutes, or has testified or is about to testify in any such proceeding. Provided no employer shall be required to rehire or retain any employee who is determined physically unable to perform his assigned duties."

2. Pursuant to 85 O.S.1981 § 7 jurisdiction is vested in the district court, it states:

 "The district courts of the state shall have jurisdiction, for cause shown, to restrain violations of this act."

The employer filed a motion for summary judgment attaching the employment agreement, the employee's deposition, and the affidavit of its general supervisor for employee relations stating that the attached termination letter was a correct copy of the discharge notice given to the employee. However, neither the affidavit of the nurse who had told the employee to return to work, the affidavit of the person who allegedly had seen the employee loitering, nor the affidavit of the employee's direct supervisor were obtained and attached to the employer's motion for summary judgment. Although the employer alluded to the fact that the employee had been unable to perform satisfactorily any of the tasks she had been assigned to do during the period of her employment either in quantity or quality, these were but bare allegations in the briefs unsupported by any evidence. The employee by deposition denied that she had trouble keeping up with her job until after she hurt her shoulder. However, the employee failed to provide affidavits or other evidentiary materials in opposition to the motion, and the employer's motion was sustained on August 30, 1985.

The employee appealed and the Court of Appeals reversed and remanded the cause with instructions, after finding that the employer's motion for summary judgment failed to comply with Rule 13 of the District Court Rules. It held that there was a material factual issue as to the cause of termination because of the employee's allegation that she had been terminated for having instituted a proceeding against General Motors, while General Motors contended that she had been dismissed for loitering.

Although our primary task in this appeal is to elucidate the parameters of "proceedings instituted" under § 5, this case raises important ancillary issues; namely, the order and burdens of proof when retaliatory discharge claims are advanced, and the proper function of summary judgment.

We turn first to the order of proof problem.

## I

## A

### The Order and Burdens of Proof in a Retaliatory Discharge Case

A review of our prior decisions, especially in view of the apparent confusion generated in this case, persuades us that it is desirable and necessary to provide further guidance to the trial courts and to the litigants they serve in order to promote the orderly presentation and resolution of retaliatory discharge claims. We conclude that the jurisprudence developed in the law of employment discrimination, as it pertains to the order and burdens of proof, is particularly adaptable to the problems encountered in cases brought under 85 O.S. 1981 § 5. It should be emphasized that we are applying standards developed by the federal courts only to the degree specified and discussed in this opinion; we do not mean to signal the wholesale adoption and application of the federal law of employment discrimination to retaliatory discharge claims brought under § 5.[3]

The Legislature has made the burden of establishing a prima facie case for retaliatory discharge relatively easy. The discharged employee must show employment, on the job injury, receipt of treatment under circumstances which put the employer on notice that treatment had been rendered for a work-related injury, or that the employee in good faith instituted, or caused to be instituted, proceedings under the Act, and *consequent* termination of employment. After a prima facie case is established, the burden then appropriately shifts to the employer to rebut the inference that its motives were retaliatory by articulating that the discharge was for a legitimate non-retaliatory reason for the discharge. Two of these reasons include the employee's inability to perform the as-

---

**3.** See e.g., *Stone v. Johnson,* 690 P.2d 459, 462 (Okla.1984) utilizing principles of federal labor law to elucidate comparable problems in Fire-fighters' and Policemen's Arbitration Act, 11 O.S. 1981 §§ 51–101 *et seq.,* as amended.

signed duties, or the bad faith pursuit of a compensation claim.[4] The employer need not persuade the court that it was actually motivated by the proffered reasons. The employer's burden is a burden of production of relevant and credible evidence, not a burden of persuasion. It is sufficient if the employer's evidence raises a genuine issue of fact concerning whether it retaliatorily discharged the employee.

■ To accomplish this, the employer must set forth clearly, through the introduction of admissible evidence, the reasons for the employee's termination. The explanation provided must be legally sufficient to justify entering judgment for the employer. If the employer carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the employer serves two purposes— it meets the plaintiff's prima facie case by presenting a legitimate reason for the action, and it frames the factual issue with sufficient clarity to provide the worker with a full and fair opportunity to demonstrate that the reason offered by the employer for terminating the employee was not the true reason for the employment decision but was, rather, a pretext. The sufficiency of the rebuttal should be evaluated by the extent to which it fulfills these functions.[5]

■ However, the nature of the burden which shifts to the employer must be understood in connection with the employee's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the employer retaliatorily discharged the employee for exercising statutory rights under the Act remains at all times with the employee. The burden of

persuasion never shifts and the employee bears the burden of persuasion that the reason given for termination was pretextual. This burden merges with the ultimate burden of persuading the court that she has been the victim of retaliatory discharge. The employee may succeed in this, either directly by persuading the court that the discharge was significantly motivated by retaliation for her exercise of statutory rights, or indirectly by showing that the employer's proffered explanation is unworthy of credence.[6]

In the present case, the worker does not dispute the fact that at the time of her termination, she had not hired a lawyer, that she had not filed a claim, or that she was about to testify in any proceedings. Rather, she asserts that she has met the statutory requirement because her two visits to the plant physician bracketing absence from the job for a work-related injury [7] constituted the institution of a proceeding, and that her employer's assertion that she was fired for loitering was merely a pretext for what was, in fact, a retaliatory discharge. On remand, the trial court should utilize and apply the foregoing order and burdens of proof in assessing the persuasive value of the positions taken by the parties.

## I

### B

#### Institution of Proceedings Under 85 O.S.1981 §§ 5, 6, 7

■ The alternative requisites for stating a prima facie case for retaliatory discharge pursuant to 85 O.S. 1981 § 5 are that the employee has in good faith either filed a claim, retained a lawyer, in good

---

**4.** *Elzey v. Forrest,* 739 P.2d 999, 1003 (Okla. 1987).

**5.** See, *United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403, 409 (1983); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207, 216 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed. 2d 668, 678 (1973); and *Womack v. Munson,*

619 F.2d 1292, 1296 (8th Cir.1980), *cert. den'd* 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981), for Title VII cases which have used analagous reasoning.

**6.** Note 5, id., and *Elzey v. Forrest,* note 4, supra.

**7.** It is undisputed that the injury was job related —after the employee was terminated she received workers' compensation benefits.

faith instituted or caused to be instituted any proceeding under the provisions of 85 O.S.1981 § 5, or has testified or is about to testify in such proceeding. Three of the statutory requirements involve proceedings under the Act: filing of a claim, initiating proceedings, or testimony in some proceeding. The fourth, the retention of a lawyer, is disconnected from the first three except insofar as possible representation in the proceedings is concerned. Three of the statutory requirements also establish bright line standards for stating a prima facie case: filing a good faith claim, retaining a lawyer, or testifying or about to testify in such proceedings. The fourth, instituted or caused to be instituted in good faith any proceeding under the provisions of Title 85 of the Oklahoma Statutes, is a catch-all category in which no bright line is discernible.[8]

Apparently, by including the clause "instituted or caused to be instituted, in good faith, any proceeding", the legislature intended to frame a standard to fit the circumstances of individual cases which involved retaliation for any substantial exercise of a right under the Act. The ultimate public policy considerations as well as the ultimate social and economic decisions are the province of the Legislature, not of the courts. Our job is to construe the statutory directives in accordance with the Legislature's intent. The problem is that the circumstances which constitute institution of proceedings for which there is a statutory right can only be described—they defy definition, requiring instead resolution on a case by case basis.

The question we must revisit is what, other than actually filing a claim, constitutes the institution of a workers' compensation claim for the purposes of 85 O.S. 1981 §§ 5, 6, and 7? In an early case, *Rucks–Brandt Const. Co. v. Price*, 165 Okl. 178, 23 P.2d 690, 693 (1933), this Court held that proceedings before the Industrial Commission were instituted by filing claims for compensation; likewise, 85 O.S. 1981 § 3.4 (now 85 O.S.Supp.1986 § 3.4) provides that all claims for any compensation or benefits under the Act shall be commenced with the filing of a notice of injury with the Administrator. Nevertheless, cases from most jurisdictions[9] as well as the recent decisions of the Oklahoma Supreme Court in *Webb v. Dayton Tire & Rubber Co.*, 697 P.2d 519, 524 (Okla.1985), by the Court of Appeals in *Zaragosa v. Oneok, Inc.*, 700 P.2d 662, 665 (Okla.App.1984), and *Hicks v. Tulsa Dynaspan, Inc.*, 695 P.2d 17, 19 (Okla.App.1985) are in agreement that proceedings may be instituted without actually filing a claim. The rationale for these decisions is that if an employee must formally file a claim for workers' compensation benefits prior to the allegedly wrongful discharge, an employer might be encouraged to terminate an injured employee expeditiously, before the employee has an opportunity to file a claim,[10] and that the legislature by using the broader "institution of proceedings" language means something more than filing a claim.

To institute means to begin, to commence, to initiate, to originate, to establish, cause to be, found, ordain, introduce, bring into use or practice, set on foot, initiate, or start.[11] The term proceedings begun or

---

**8.** See *Delaware State College v. Ricks*, 449 U.S. 250, 265, 101 S.Ct. 498, 508, 66 L.Ed.2d 431, 444 (1980) for a discussion by Justice Stevens of the problems the lack of bright line standards can create in retaliatory discharge cases under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §§ 2000e *et. seq.*

**9.** See Annot., "Recovery for Discharge from Employment in Retaliation for Filing Workers' Compensation Claim," 32 A.L.R.4th 1221, 1227–28 (1984) and Love, "Retaliatory Discharge for Filing a Workers' Compensation Claim: The Development of a Modern Tort Action," 37 Hastings L.J. 551, 567–68 (1986).

**10.** *Wolcowicz v. Intercraft Indus. Corp.*, 133 Ill. App.3d 157, 88 Ill.Dec. 431, 433–34, 478 N.E.2d 1039, 1041–42 (1985); *Roseborough v. N.L. Indus.*, 10 Ohio St.3d 142, 462 N.E.2d 384, 386 (1984); *Texas Steel Co. v. Douglas*, 533 S.W.2d 111, 114–15 (Tex.Civ.App.1976); and Love, "Retaliatory Discharge for Filing a Workers' Compensation Claim:," note 9, supra.

**11.** *Wales v. Tax Comm'n.*, 100 Ariz. 181, 412 P.2d 472, 475 (1966); *City of Cincinnati v. Hawkins*, 81 Ohio App. 459, 78 N.E.2d 61–62 (1947); and *McLendon v. Baldwin*, 166 Ga. 794, 144 S.E. 271–72 (1928).

proceedings instituted has been held to embrace all of the essential steps or measures required by law to invoke, establish or vindicate a right.[12] The term, proceedings, both in common parlance and in legal acceptance, implies action, procedure, prosecution. If it is a progressive course, it must be advancing; and it cannot be satisfied by remaining at rest.[13]

A proceeding may refer to a complete remedy as well as a mere procedural step which is incorporated into the overall solution for redress.[14] Under the Oklahoma Pleading Code, 12 O.S.Supp.1984 § 2001 *et seq.*, the distinction between proceedings and actions was repealed, and only one form of action, a civil action, is recognized in the district courts of this state. Under § 2003, a civil action is commenced by filing a petition with the court. Obviously, the term proceedings as used in the Workers' Compensation Act has a broader meaning than the word, "action", and we have previously decided that the filing of a claim is not necessary to institute a proceeding.

In order for the phrase "instituted or cause to be instituted any proceeding" to be given operative effect, it must be construed to mean actions taken by the claimant other than the filing of a claim. Otherwise, the phrase would be superfluous within the wording of the statute.[15] This conclusion is buttressed by the failure of the legislature to use the more restrictive term, "file a claim," in favor of the broader term, "institute a proceeding", and with the fact that because the statutory procedures for commencing a claim are set forth in § 3.4, and that the procedures for receipt of medical treatment are defined by statute in 85 O.S. 1981 §§ 13, 14, 26. Therefore, the term, institution of proceedings, must mean something in addition to the filing of a claim. This analysis is also more consistent, not only with the informality of workers' compensation proceedings, but with the settled law of this state that because these proceedings are remedial in nature, the workers' compensation statutes are subject to a liberal construction.[16]

Although the specific formulas vary, depending on the statutes or case law of each jurisdiction, employees have recovered damages for retaliatory discharge if the worker has filed a claim or instituted proceedings, instituted, or caused to be instituted in good faith any proceeding, claimed or attempted to claim benefits, filed a claim, hired a lawyer, made known an intention to file a claim, or received or attempted to receive benefits.[17]

In the landmark retaliatory discharge case, *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425, 63 A.L.R.3d 393 (1973), the Indiana Supreme Court was asked to provide a remedy for an employee who had been discharged from her job in retaliation for filing a workers' compensation claim. The employer argued that it had a right to terminate the employee without cause because she was an employee at-will. The *Frampton* court, although acknowledging that under ordinary circumstances an at-will employee may be discharged without cause, recognized an exception to the general rule. It held that if an employee at-will is discharged solely for exercising a statutorily conferred right, the worker may proceed with a tort action against the employer for compensatory and

---

**12.** *Prudential Property & Casualty Co., v. Grimes,* 725 P.2d 1246, 1250 (Okla.1986); *First Nat'l Bank of Pauls Valley v. Crudup,* 656 P.2d 914, 916 (Okla.1982).

**13.** *Beers v. Haughton,* 9 Pet. 329, 368, 34 U.S. 329, 368, 9 L.Ed. 145 (1835).

**14.** *Rooney v. Vermont Investment Corp.,* 10 Cal.3d 351, 110 Cal.Rptr. 353, 515 P.2d 297, 308 (1973).

**15.** *Hicks v. Tulsa Dynaspan, Inc.,* 695 P.2d 17, 19 (Okla.App.1985).

**16.** *Special Indem. Fund. v. Treadwell,* 693 P.2d 608, 610 (Okla.1984); *Zaragosa v. Oneok, Inc.,* 700 P.2d 662, 665–66 (Okla.App.1984); Note, "Workers' Compensation—Retaliatory Discharge—The Legislative Response to *Dockery v. Lampart Table Co.*", 58 N.C.L. Rev. 629, 640 (1980).

**17.** See note 9 supra, Annot., "Recovery for Discharge from Employment in Retaliation for Filing Workers' Compensation Claim," and Love, "Retaliatory Discharge for Filing a Workers' Compensation Claim:", for cited statutes and cases.

punitive damages. Subsequently, the Illinois Court in *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978) decided that employers could not attempt to discourage employees from asserting their statutory right to file a claim for workers' compensation benefits without placing themselves in the untenable position of violating public policy.

In *Leach v. Lauhoff Grain Co.*, 51 Ill. App.3d 1022, 1024, 9 Ill.Dec. 634, 636, 366 N.E.2d 1145, 1147 (1977), the Illinois appellate court, in response to the employer's contention that an employee at will may be discharged without cause, stated:

> "To accept defendant's argument here would be to say to the employee, 'Although you have no right to a tort action, you have a right to a workmen's compensation claim which, while it may mean less money, is a sure thing. However, if you exercise that right, we will fire you.'"

 The distillate of this Court's holdings in *Thompson v. Medley Material Handling, Inc.*, 732 P.2d 461, 463 (Okla. 1987), *Elzey v. Forrest* 739 P.2d 999, 1001 (Okla.1987), and *Pierce v. Franklin Electric Co.*, 737 P.2d 921 (Okla.1987), is: 1) the protection of § 5 is limited to good faith actions taken by an employee who has suffered a work-related injury; 2) an employer may, without incurring tort liability, discharge an at-will employee who is physically unable to perform the duties of the job; 3) the employee must offer evidence which would establish circumstances giving rise to a legal inference that the discharge was significantly motivated by retaliation for the exercise of statutory rights; and 4) if retaliatory motivations comprise a significant factor in a employer's decision to terminate an employee, even though other legitimate reasons exist to justify the termination, the discharge violates the intent of § 5.

Initially, it appears that the entry of summary judgment should be summarily affirmed because of the employee's deposi-

tion testimony that she was unable after her injury to perform her duties. However, the *Pierce* teaching that an at-will employee may be fired for being unable physically to perform the job, is not controlling here because the employer insists that the worker was fired for loitering rather than for any physical incapacity. Therefore, we must answer the question—whether under the facts of this case receipt of medical treatment at the job situs by a physician provided by the employer constitutes the institution of proceedings for purposes of stating a prima facie case under § 5.

The worker relies on *Elzey, Zaragosa,* and *Pierce* as well as *Webb v. Dayton Tire & Rubber Co.*, 697 P.2d 519, 524 (Okla. 1985), with special emphasis on the language in *Webb*. The *Webb* Court held that "in this case the receipt of medical treatment *or* the commencement of temporary compensation payments under the provisions of the Workers' Compensation Act, constitutes the institution of proceedings ..." for § 5 purposes. In *Webb*, the worker who was terminated for failing to return to work, reported the injury to her employer, was sent home by the company doctor, and received temporary disability benefits under the Workers' Compensation Act during the four weeks she was off work. In *Zaragosa*, the employee was treated by her own physician before she was seen by the doctor designated by her employer. She was terminated for disobeying her employer's order to return to work when she had been directed by her physician to rest for seven days. In *Elzey* the worker actually filed a claim, and in *Pierce* the employee received payments for temporary total disability.[18]

Our research has not uncovered a case directly in point, and because not every injury results in the pursuit of a claim, it is presumptuous to conclude that every time an employer provides first aid treatment that a workers' compensation proceeding has been "instituted".[19] However, because

---

**18.** This was also the case in *Texas Steel, Webb,* and *Hicks*.

**19.** Note, "Workers' Compensation—Retaliatory Discharge—The Legislative Response to *Dockery v. Lampart Table Co.*", see note 16, supra.

each case must be analyzed on an individualized basis, we cannot point to a single factor which, if present, will invariably determine whether a proceeding has been instituted. Nevertheless, because the employer is required by 85 O.S.1981 § 14 to provide medical attention for its employees,[20] and because notice of the receipt of treatment could play a significant factor in the employer's decision to terminate an employee, insofar as stating a prima facie case is concerned, the Legislature must have intended the institution of proceedings language in § 5 to protect the employee during the period of vulnerability which may exist from the time the employer becomes aware of the injury to the time a claim is filed.

■ Merely seeking and receiving first aid is not in and of itself sufficient to institute proceedings. Some other evidence sufficient to persuade the trier of fact that the worker intended or reasonably could have intended to institute proceedings is necessary. Marginal employees cannot insulate themselves from discharge by an opportune visit to the first aid station.[21] First aid coupled with circumstances which raise a clear inference of an anticipated claim must be present before the institution of proceedings is triggered. For now, we simply conclude that the provision of medical treatment by the employer, when accompanied by circumstances (including, e.g., sending the employee home to recuperate from an on-the-job-injury) which would lead a reasonable employer to infer that a workers compensation claim would in all probability ensue, constitutes the institution of proceedings.

On remand, it will remain the task of the trier of fact to resolve the factual issues involved in these retaliatory discharge cases. Our delineation of the order and burdens of proof is intended to ensure that those issues are presented in a manner that is coherent and consistent with the legal duties of the parties.

## II

### Failure To Comply With 12 O.S.Supp.1985 Ch. 2, App., District Court Rule 13

Although we have determined that the employee has stated a prima facie case for

20. Under the provisions of 85 O.S.1981 § 3.4 (amended in 1986 without significant change), the Act provides that claims for any compensation or benefits are to be filed with the Administrator of the Workers' Compensation Court. All matters pertaining to the claim are presented to the Administrator unless there is a controverted issue or if the parties have received an agreed final order from the court. The administrator sets hearings to resolve any disputed issues. In 1984, pursuant to 85 O.S. 1981 § 13 the award of compensation was not allowed until after the disability had continued beyond three days. Section 13 was amended in 1986 to extend the time period to seven days. Section 14 of the Act requires the employer to provide medical treatment for the injured employee, and the attending doctor is required to furnish the employer and the employee with a full examining report of injuries found at the time of the examination and the proposed treatment within seven days of the examination. If the employer chooses, it may select a doctor to examine the employee—a report of this examination must be furnished to the employee within seven days of the examination. Regardless of whether the employee's doctor or the employer's physician renders medical treatment, the reasonableness of the charges must be submitted to the Court for approval *unless* a written contract exists between the physician and the employer. If in 1984, the disability had not disappeared after three days (the 1986 amendment now makes it seven days), § 26 requires that a claim for compensation is presented to the Administrator. If the parties have reached a settlement, a memorandum is prepared, signed by both parties and submitted to the court for approval.

21. See *Mt. Healthy School Dist. v. Doyle*, 429 U.S. 274, 286, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977), and *Hall v. O'Keefe*, 617 P.2d 196, 201 (Okla.1980) in which this Court said:

"To establish a claim that the discharge of an officer by a corporate authority violates section 51–102(6) of the Fire and Police Arbitration Act, the officer must show that his involvement in the activities protected by the Act was a substantial motivating factor in the decision to terminate his employment. A mere showing that the protected activities would be adversely affected by discharge is not sufficient to meet this burden. The officer cannot, by engaging is such conduct, shield himself from a removal which would occur in the absence of that conduct, nor can he by his involvement in protected labor activities force his employer to prove some more substantial grounds for removal than would have been required otherwise."

retaliatory discharge, *this in no way signals a right of recovery in district court.* Under Rule 13,[22] a party may file a motion for summary judgment on the grounds that the pleadings, depositions, interrogatories, affidavits, and other exhibits reflect that there is no substantial controversy pertaining to any material fact. The party opposing the motion, in order to prevail, may file a written statement containing the material facts which show a genuine issue exists and attach affidavits and other evidentiary materials which would be admissible at trial in support of these facts.

Motions for summary judgment do not admit all well-pleaded facts in a petition even though the allegations of the pleadings standing alone may raise an issue of material fact. If the defendant introduces evidence which indicates that there is no substantial controversy of a fact material to plaintiff's cause of action and this fact is in the defendant's favor, the plaintiff has the burden of showing that evidence is available which would justify the trial of the issue. Affidavits attached to a motion for summary judgment must set forth such facts as would be admissible in evidence rather than allegations of conclusory statements. Without a showing that evidence is available, mere contentions and arguments cannot and will not make it true.[23]

Even when the basic facts are undisputed, motions for summary judgment should be denied, if under the evidence, reasonable persons might reach different inferences or conclusions from the undisputed facts.[24] Summary judgment is proper only when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.[25] In appraising the sufficiency of a petition, the accepted rule is that a petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle her to relief.[26]

■■■■ This Court has discovered that approximately one-third of its caseload involves appeals from summary judgments. Many of these have been entered prematurely—as is the case here. We have discussed the facts previously; however, a brief restatement clearly illustrates this point. The employer submitted one affidavit, that of the general supervisor of employee relations essentially stating that the

---

**22.** Title 12 O.S.Supp.1985 Ch. 2, App., District Court Rule 13 provides in pertinent part:

"a. A party may move for judgment in his favor on the ground that the depositions, admissions in the pleadings, stipulations, answers to interrogatories and to requests for admissions, affidavits, and exhibits on file, filed with his motion or subsequently filed with leave of court show that there is no substantial controversy as to any material fact. The motion shall be accompanied by a concise written statement of the material facts as to which the movant contends no genuine issue exists and the reasons why summary judgment should be granted....

b. If the adverse party or parties wish to oppose the granting of the motion, they shall serve on the moving party and file with the court clerk within fifteen days after service of the motion a concise written statement of the material facts as to which he or they contend a genuine issue exists and the reasons for denying the motion. The adverse party shall attach to the statement affidavits and other materials containing facts that would be admissible in evidence, but the adverse party cannot rely on the allegations or denials in his pleading....

c. The affidavits that are filed by either party shall be made on personal knowledge, shall show that the affiant is competent to testify as to the matters stated therein, and shall set forth matters that are admissible in evidence...."

**23.** ·*Weeks v. Wedgewood Village, Inc.,* 554 P.2d 780, 784 (Okla.1976); *Runyon v. Reid,* 510 P.2d 943, 946, 58 A.L.R.3d 814, 818 (Okla.1973).

**24.** *Wilds v. Universal Resources Corp.,* 662 P.2d 303, 307 (Okla.1983); *Munley v. ISC Financial House, Inc.,* 584 P.2d 1336, 1338 (Okla.1978).

**25.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *Hinson v. Cameron,* 742 P.2d 549, 561 (Okla. 1987) (concurring opinion by Kauger, J.); *Weldon v. Seminole Mun. Hosp.,* 709 P.2d 1058–59 (Okla.1985); *Flanders v. Crane Co.,* 693 P.2d 602, 605 (Okla.1984); *Sellers v. Oklahoma Publishing Co.,* 687 P.2d 116, 120 (Okla.1984); *Heavner v. Farmers Ins. Co.,* 663 P.2d 730, 732 (Okla. 1983).

**26.** *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80, 84 (1957); *Flanders v. Crane Co.,* see note 25, supra.

discharge letter was a correct copy of the one sent to the employee. Rule 13(c) provides that affidavits filed in support of motions for summary judgment shall be made on personal knowledge.[27] However, the employer did not provide an affidavit from the nurse to support its assertion that the employee was told to return to work, or an affidavit from a member of management stating that the employee had been seen loitering. Nor did the employer offer any evidence to show that the employee was incompetent. On the other hand, the worker did not respond to the motion either by submitting affidavits in opposition thereto or by providing any evidence to show that she properly performed her duties—she now claims that the employer failed to show evidence to the contrary. This falls short of the burden of proof which the employee must sustain. Neither party complied with Rule 13. However, because the employee stated a prima facie case, the entry of summary judgment was premature. The cause is reversed and remanded for further proceedings consistent with the views expressed in this opinion.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF APPEALS VACATED; JUDGMENT OF THE TRIAL COURT REVERSED AND REMANDED.

DOOLIN, C.J., HARGRAVE, V.C.J., and LAVENDER, ALMA WILSON and KAUGER, JJ., concur.

OPALA, J., concurs in Part I, dissents from Part II.

HODGES, SIMMS and SUMMERS, JJ., dissent.