# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### MAY 4, 2011 Session

## FEDERATED RURAL ELECTRIC INSURANCE EXCHANGE, ET AL. v. WILLIAM R. HILL, ET AL.

Direct Appeal from the Circuit Court for Davidson County
No. 05C1284      Barbara N. Haynes, Judge

No. M2009-01772-COA-R3-CV - Filed August 8, 2011

Defendant allegedly suffered an on-the-job injury to his knees over the course of several years, and Plaintiffs paid workers' compensation benefits on his behalf.  However, after Defendant was videotaped building a barn, his employment was terminated and suit was filed against him for fraud.  Defendant then filed a counter-complaint alleging, among other things, retaliatory discharge.  The trial court granted Plaintiffs' motion for summary judgment with regard to the retaliatory discharge claim, and we affirm and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Clifford E. Wilson, Madisonville, Tennessee, for the appellant, William R. Hill

W. Stuart Scott, Kerry M. Ewald, Nashville, Tennessee, for the appellees, Federated Rural Electric Insurance Exchange, et al

**OPINION**

## I.  FACTS & PROCEDURAL HISTORY

The facts of this case have been set forth, in part, in the previous opinion of this Court:

> During the course of his employment with Fort Loudoun Electric Cooperative ("Fort Loudoun,"), William R. Hill [("Defendant" or "Appellant")] allegedly suffered on-the-job injuries to his knees over the course of several years.  In 1990, Fort Loudoun and its insurer, Federated Rural Electric Insurance Exchange ("Federated" and, together with Fort Loudoun, "Plaintiffs" or "Appellees") accepted a workers compensation claim and voluntarily paid Mr. Hill $23,595.00 in temporary total disability benefits and $51,160.11 in medical benefits for alleged injuries to Mr. Hill's knees. The 1990 settlement resulted in 70% permanent partial disability to the body as a whole.

> On July 9, 2003, Fort Loudoun and Federated entered into a second settlement with Mr. Hill whereby they agreed to pay Mr. Hill workers' compensation benefits for an alleged 1998 injury to Mr. Hill's knees.  Under the Agreed Order, the Plaintiffs paid medical benefits in the amount of $114,064.49, case management costs of $8,464.13, and $14,346.42 in temporary disability benefits.  This settlement, along with the 1990 settlement, totaled 100% permanent, partial disability benefits to the body as a whole.  In addition, Federated and Fort Loudoun agreed to leave lifetime future medical benefits open for treatment of Mr. Hill's injuries, and paid $2,500.00 as an advance payment toward future lifetime medical benefits. Combined, the 1990 and 2003 settlements brought Mr. Hill to over 100% in temporary, total and permanent, partial disability benefits, thereby exceeding the maximum amount to which a claimant is entitled under the Tennessee Workers' Compensation Act, T.C.A. § 50-6-102.

*Federated Rural Elec. Ins. Exchange v. Hill*, No. M2005-02461-COA-R3-CV, 2007 WL 907717, at *1 (Tenn. Ct. App. Mar. 26, 2007) *perm. app. denied* (Tenn. Oct. 22, 2007).

On November 19, 2004, while attempting to rise from the toilet at his home, Mr. Hill's knee allegedly "gave way" causing him to fall.  Mr. Hill filed a third claim for workers' compensation benefits, and Federated agreed to pay him temporary total disability benefits

from the date of the fall.

Thereafter, Mr. Hill was offered light-duty desk work at Fort Loudoun. While Mr. Hill was out from work and collecting total disability benefits, he was caught on videotape building a barn. Over the course of several days, Mr. Hill was seen climbing up and down a ladder, walking over uneven ground, and walking across a roof without apparent difficulty. After reviewing the videotapes, Mr. Hill's treating physician, Dr. Parsons, opined in an April 25, 2005 letter that "[Dr. Parsons] certainly do[es] not feel like Mr. Hill is totally disabled to work and given his documented physical activities . . . it is difficult to imagine the patient having restrictions given the physical labor he did on an ongoing basis . . . ."

By letter dated May 2, 2005, Fort Loudoun terminated Mr. Hill's employment. On that same day, Fort Loudoun and Federated filed suit against Mr. Hill for fraud, pursuant to T.C.A. § 50-6-225(a)(1) and the Workers' Compensation Fraud Act, T.C.A. § 56-47-101 et seq., citing Mr. Hill's ability to perform strenuous, physical activity as caught on videotape. The Plaintiffs requested a finding that Mr. Hill was improperly collecting temporary, total disability benefits and a finding that Mr. Hill had engaged in fraud. The Plaintiffs prayed that Mr. Hill be assessed appropriate penalties and that his right to any additional workers' compensation benefits (which had been approved by the trial court's order of July 9, 2003, *supra* ) be terminated. At the time they filed the Complaint, the Plaintiffs also served interrogatories, requests for production of documents and requests for admissions on Mr. Hill. Mr. Hill was served with these discovery requests on or about May 7, 2005. Mr. Hill filed no responsive pleadings. Rather, on or about May 23, 2005, Mr. Hill served the Plaintiffs with notice to take depositions. On May 25, 2005, Plaintiffs filed a Motion to Quash the discovery requests and, on May 27, 2005, Mr. Hill responded to the Motion to Quash. The motions were heard on May 27, 2005 and, by order of June 6, 2005, the trial court granted the Motion to Quash.

On June 2, 2005, Mr. Hill filed a motion to dismiss, in which he first objected to venue in the Davidson County court. Plaintiffs filed a response to the motion to dismiss on July 8, 2005. The motion was heard on July 15, 2005. By order of July 27, 2005, the trial court entered an order denying Mr. Hill's motion to dismiss and specifically retaining venue.

On June 9, 2005, Mr. Hill filed an Answer to the Complaint. On July 29, 2005, Mr. Hill filed a Counter-Complaint against Federated and Fort Loudoun for intentional infliction of emotional distress and retaliatory discharge. Mr. Hill's wife, Suzann . . . joined in the Counter-Complaint, asserting derivative causes of action and a loss of consortium claim stemming from the termination of Mr. Hill's employment. On August 26, 2005, in response to the Counter-Complaint, Plaintiffs filed a "Motion to Dismiss the Counter-Complaint for failure to state a claim upon which relief may be granted, to strike the Counter-Complaint, to Request a more Definitive Statement." The Hills filed a response to this motion on September 6, 2005 and the motion was heard on September 9, 2005.

*Id.* at *1-2 .

The trial court entered an order on September 21, 2005, dismissing Mr. Hill's tort claims and striking his Counter-Complaint, but allowing him to file a new Counter-Complaint, which complied with Tennessee Law and the Rules of Civil Procedure, containing only claims under the Tennessee Workers' Compensation Act and for retaliatory discharge. *Id.* at *2-3. Mrs. Hill filed a notice of appeal from this order. *Id.* at *3. Mr. Hill then filed his first Amended Counter-Complaint, but Plaintiffs informed Mr. Hill's counsel that they would file a motion to dismiss if his counter-complaint was not further amended to comply with Tennessee law and the trial court's prior order. *Id.* at *3. Mr. Hill made no changes, but instead filed a motion for default judgment for Plaintiffs' alleged failure to answer. *Id.* Subsequently, he attempted to add claims against Federated for tortious interference with contract and procurement of breach of contract. *Id.* at *4. Plaintiffs responded, asserting that Mr. Hill's proposed Amended Counter-Complaint failed to state a claim upon which relief could be granted. *Id.* On February 13, 2006, the trial court entered a "Final Order" overruling Defendant's motion for a default judgment, and staying all proceedings pending a final ruling from this Court regarding Mrs. Hill's appeal of the September 2005 order. *Id.* Mr. Hill appealed from the February 13 order, and his appeal was consolidated with Mrs. Hill's appeal. *Id.*

On appeal, this Court reversed the trial court's dismissal of Mr. Hill's retaliatory discharge claim:

Although the majority of Mr. Hill's allegations are conclusory, he does allege that he made a workers' compensation claim and that he was discharged because he made such a claim. He also alleges that this was motivated in part

-4-

by the Plaintiffs' desire to save money, because the termination of his employment would prevent the future payment of medical bills which they had heretofore agreed to. In any event, Mr. Hill has barely proved his position sufficiently, but we must give every benefit of the doubt to the non-movant in a 12.02(6) motion. Accordingly, we will reverse the trial court's dismissal of the Counter-Complaint and retaliatory discharge. We do this with the understanding that this, in no way, prevents a motion to strike for irrelevant or otherwise scurrilous allegations in the complaint, nor does this prevent the filing of a summary judgment motion on the part of the Plaintiffs.

*Id.* at *12. However, we affirmed the trial court's order in all other respects. *Id.* at *15.

On remand, discovery depositions were taken of Mr. and Mrs. Hill; Fort Loudoun employees Lisa Lingerfelt, Robert Long, and Chad Kirkpatrick; and Federated employee Michelle Muller. Plaintiffs then moved for summary judgment on Mr. Hill's retaliatory discharge claim as well as on his workers' compensation claim, contending that Mr. Hill's at-home injury did not occur in the course of his job, and therefore was not compensable. Mr. Hill also filed a cross-motion for partial summary judgment on his workers' compensation claim, arguing that his November 2004 injury was a direct result of his prior injuries. Following a hearing, the trial court entered an order on July 24, 2009, granting Plaintiffs' motion for summary judgment with regard to both retaliatory discharge and workers' compensation.

Mr. Hill appealed the July 2009 order and sought to have both the retaliatory discharge and workers' compensation issues consolidated for hearing before the Supreme Court. However, his motion was denied, and the workers' compensation issues were referred to the Supreme Court Special Workers' Compensation Appeals Panel. The Panel issued its opinion on October 7, 2010, in which it modified the order of the trial court as follows:

The dismissal of Employee's claim for medical benefits under the workers' compensation law, and the 2003 settlement agreement, is reversed. The dismissal of Employee's claim against the Second Injury Fund for permanent partial disability benefits is affirmed. The dismissal of Employee's claim for temporary total disability benefits from February 14, 2004 until the date of his surgery is affirmed. The dismissal of Employee's claim for temporary disability benefits for other periods is vacated. The denial of Employee's motion for summary judgment is affirmed.

***Federated Rural Elec. Ins. Exchange v. Hill***, No. M2009-01772-WC-R3-WC, 2010 WL 5313731, at *9 (Tenn. Work. Comp. Panel Oct. 7, 2010). The Panel then transferred the appeal to this Court for consideration of the dismissal of Mr. Hill's retaliatory discharge claim. ***Id.***

## II.  ISSUES PRESENTED

Appellant presents the following issues for review, summarized as follows:

1.  Whether the trial court erred in considering the following evidence: a) the Affidavit of Michelle Muller; b) *ex parte* correspondence from Dr. Parsons to Federated; and c) a "DVD compilation";

2.  Whether the trial court erred in granting Appellee's motion for summary judgment;

3.  Whether the trial court erred in entering the July 24, 2009 order, which allegedly included findings of fact not addressed in the trial court, and when it communicated only with Plaintiffs' counsel;

4.  Whether the trial court erred in excluding the Affidavit of Genelle McDaniel;

5.  Does the record support the trial court's finding that Dr. Parsons offered Mr. Hill right knee replacement surgery prior to November 29, 2004;

6.  Whether the trial court erred in finding that Mr. Hill committed fraud;

7.  Whether the trial court erred in finding that Mr. Hill wrongfully collected temporary total disability benefits and wrongfully asserted a claim for long-term disability benefits; and

8.  Whether the trial court erred in finding that Mr. Hill was not doubling his pain medication or tightly wrapping his knees while constructing the shed.

For the following reasons, we affirm the decision of the trial court.

## III.   STANDARD OF REVIEW

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Tenn. R. Civ. P. 56.04.** "The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." *Green v. Green,* 293 S.W.3d 493, 513 (Tenn. 2009) (citing *Martin v. Norfolk S. Ry.,* 271 S.W.3d 76, 83 (Tenn. 2008); *Amos v. Metro. Gov't of Nashville & Davidson County,* 259 S.W.3d 705, 710 (Tenn. 2008)). To meet its initial burden, the moving party must either affirmatively negate an essential element of the nonmoving party's claim or establish an affirmative defense. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008) (citing *Byrd v. Hall,* 847 S.W.2d 208, 215 n.5 (Tenn. 1993)). If this initial burden of production is not satisfied, the motion for summary judgment should be dismissed. *Id.* (citing *Byrd,* 847 S.W.2d at 215). However, if the moving party meets its initial burden, the burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists. *Id.* (citing *Byrd,* 847 S.W.2d at 215). "When ascertaining whether a genuine dispute of material fact exists in a particular case, the courts must focus on (1) whether the evidence establishing the facts is admissible, (2) whether a factual dispute actually exists, and, if a factual dispute exists, (3) whether the factual dispute is material to the grounds of the summary judgment." *Id.* Not every factual dispute requires the denial of a motion for summary judgment. *Id.* at 514. To warrant denial of a motion for summary judgment, the factual dispute must be material, meaning "germane to the claim or defense on which the summary judgment is predicated." *Id.* (citing *Eskin v. Bartee,* 262 S.W.3d 727, 732 (Tenn. 2008); *Luther v. Compton,* 5 S.W.3d 635, 639 (Tenn. 1999)).

When the party moving for summary judgment is a defendant asserting an affirmative defense, he or she may shift the burden of production by alleging undisputed facts that show the existence of the affirmative defense. *Hannan*, 270 S.W.3d at 9 n.6. "If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist." *Martin,* 271 S.W.3d at 84 (citing *McCarley v. W. Quality Food Serv.,* 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd,* 847 S.W.2d at 215). The nonmoving party may satisfy its burden of production by:

> (1) pointing to evidence establishing material factual disputes that were over-
> looked or ignored by the moving party; (2) rehabilitating the evidence attacked
> by the moving party; (3) producing additional evidence establishing the
> existence of a genuine issue for trial; or (4) submitting an affidavit explaining
> the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

*Id.* (citing *McCarley,* 960 S.W.2d at 588; *Byrd,* 847 S.W.2d at 215 n.6).

The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness. *Martin,* 271 S.W.3d at 84. However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Id.* (citing *Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 89 (Tenn. 2000)). Summary judgment is appropriate "when the undisputed facts, as well as the inferences reasonably drawn from the undisputed facts, support only one conclusion--that the moving party is entitled to a judgment as a matter of law." *Green,* 293 S.W.3d at 513 (citing *Griffis v. Davidson County Metro. Gov't,* 164 S.W.3d 267, 283-84 (Tenn. 2005); *Pero's Steak & Spaghetti House v. Lee,* 90 S.W.3d 614, 620 (Tenn. 2002)).

## IV. DISCUSSION
### *A. Consideration of Certain Evidence*

First, we consider Mr. Hill's argument that the trial court erred in considering certain evidence regarding Plaintiffs' motion for summary judgment. Mr. Hill contends that the trial court erred in considering the affidavit of Federated adjuster Michelle Muller in which Ms. Muller stated that "Federated Rural Electric Insurance Exchange would not have paid to Mr. Hill temporary total disability benefits except for the fact that Mr. Hill said he could not do his job." Mr. Hill argues that the affidavit could not be "made upon personal knowledge[,]" as required by Tennessee Rule of Civil Procedure 56.06, because Ms. Muller was located in Kansas, and thus, did not hear Mr. Hill make such a statement.

We find this issue without merit. In her affidavit, Ms. Muller does not imply that she personally heard Mr. Hill say that he could not perform his job. Instead, she simply states that, based upon her personal knowledge of Federated's policies, Federated's decision to pay disability benefits was based upon this statement having been made. Furthermore, the manifestation of Mr. Hill's inability to work is corroborated by Fort Loudoun employee Lisa

Lingerfelt, who testified that when Mr. Hill attempted to return to light duty work in February 2005, she met with him and he "told [her] he didn't think he could work. . . . he just didn't think he could do it."

Next, Mr. Hill argues that the trial court should not have considered an April 25, 2005 letter from Dr. Parsons to Federated, in which Dr. Parsons stated in part:

> [O]n review of the five DVD surveillance tapes I have available, I certainly do not feel like Mr. Hill is totally disabled to work and given his documented physical activities, building a barn, it is difficult to imagine the patient having restrictions given the physical labor he did on an ongoing basis without apparent problem.

Mr. Hill claims that the letter was inadmissible both because it is unsworn and because Dr. Parsons failed to obtain Mr. Hill's consent prior to sending it. Mr. Hill seems to suggest that this letter is relevant to his retaliatory discharge claim because he claims Dr. Parsons conspired with Plaintiffs to deny his workers' compensation claim. At Mr. Hill's deposition, Plaintiffs attempted to introduce Dr. Parsons' medical records regarding Mr. Hill from the time of his at-home injury on November 29, 2004, through April 25, 2005. Mr. Hill's counsel approved Plaintiffs' counsel "ask[ing] [Mr. Hill] about one of those records," but he objected to the "wholesale putting those in" the record. However, later in the deposition, when Plaintiffs' counsel questioned Mr. Hill about the letter, Mr. Hill's counsel specifically inquired whether the letter was included in the record, and when Plaintiffs' counsel responded affirmatively, Mr. Hill's counsel offered no objection. Because it does not appear to this Court that Mr. Hill specifically challenged the inclusion of the letter in the record, we find the issue is waived on appeal. *See* **Tenn. R. App. P. 36(a)**.

Finally, Mr. Hill challenges the trial court's consideration of a "DVD compilation" demonstrating Mr. Hill's physical abilities when he claimed to be unable to work, because, he contends, it does not meet the requirements of Tennessee Rule of Civil Procedure 56 and because it has been edited. At oral argument on the motion for summary judgment, Mr. Hill's counsel objected to the court viewing the less than seven-minute DVD compilation, but he stated that he would "be glad for the Court to look at [the full-length video tapes of Mr. Hill.]" In its order, the trial court noted that it had "viewed the lengthy surveillance on the Defendant, William Hill." Accordingly, we find this issue without merit.

### B. Grant of Summary Judgment

Although an at-will employee may typically be discharged for any reason, the Worker's Compensation Act prevents an employee from being fired in retaliation for filing a workers' compensation claim. *Thomason v. Better-Bilt Aluminum Prods., Inc.*, 831 S.W.2d 291, 292 (Tenn. Ct. App. 1992) (citing *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441 (Tenn. 1984)). A plaintiff seeking to prove that he was discharged in retaliation for filing a workers' compensation claim must establish the following elements: "(1) The plaintiff was an employee of the defendant at the time of the injury; (2) the plaintiff made a claim against the defendant for workers' compensation benefits; (3) the defendant terminated the plaintiff's employment; and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment." *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558-59 (Tenn. 1993). Proof that the plaintiff was employed, that he exercised his rights under the workers' compensation act, and was subsequently discharged is insufficient to establish causation. *See Thomason*, 831 S.W.2d at 293. Instead, the plaintiff must establish the causal link by direct evidence or "compelling circumstantial evidence." *Id.* (citations omitted). Moreover, the plaintiff must show that his workers' compensation *claim*, as opposed to his *injury*, was the "true or substantial reason" for his discharge. *Vaughan v. Harvard Indus. Inc.*, 926 F. Supp. 1340, 1351 (W. D. Tenn. 1996) *overruled on other grounds by Bratten v. SSI Servs., Inc.*, 185 F.3d 625 (6th Cir. 1999).

"'Once the employee has made a *prima facie* case of retaliation, the burden devolves upon the employer of proving a legitimate nonpretextual nonretaliatory reason for the discharge. The reason may involve the employee's own shortcomings, such as unexplained tardiness, excessive absenteeism, lying as to previous compensation claims, or physical inability to do the job. . . . '" *Anderson*, 857 S.W.2d at 559 (quoting 2A A. Larson, *The Law of Workmen's Compensation*, § 68.36(d), pp. 188-191 (1990)). "If the employer presents a legitimate, non-discriminatory reason for the employment action, the burden shifts back to the employee to prove the employer's explanation is pretextual." *Frizzell v. Mohawk Indus.*, No. M2004-01598-COA-R3-CV, 2006 WL 1328773, at *3 (Tenn. Ct. App. May 15, 2006). "In doing so, the employee 'must present specific admissible facts, which realistically challenge the defendant's stated reason.'" *Id.* (quoting *Hubrig v. Lockheed Martin Energy Sys.*, No. 03A01-9711-CV-00525, 1998 WL 240128, at *8 (Tenn. Ct. App. May 4, 1998)). If the employee is unable to show that the stated reason for discharge was pretextual, he faces summary dismissal of his claim. *See id.* (citing *DeVore v. Deloitte & Touche*, No. 01A01-9602-CH-00073, 1998 WL 68985, at *11 (Tenn. Ct. App. Feb. 20, 1998)).[1]

---

[1] The analytical framework to be used in retaliatory discharge cases has been in flux in Tennessee. In *Gossett*

(continued...)

In its order, the trial court found that Plaintiffs had negated an essential element of Mr. Hill's retaliatory discharge claim–that his workers' compensation claim was a substantial factor in his discharge. The court found that Mr. Hill's claims for workers' compensation were accepted and that he was asked to return to work after he made such claims. The court further noted that "[i]t was [Mr. Hill] who did not want to go back to work and who said he could not do his job." Additionally, the court found that Plaintiffs had established a legitimate, non-pretextual, non-retaliatory reason for his discharge–"his fraud in claiming he could not do a desk job while he was clearly able to engage in a high level of physical activity as evidenced by the videotaped surveillance of [Mr. Hill] and the finding of [Mr. Hill's] own treating physician." On appeal, Mr. Hill seems to argue that even if he was fired for fraud, that he can claim retaliatory discharge: "In the absence of a claim for workers' compensation, there would be no claim for fraud, and it is that claim which resulted in Mr. Hill being fired."

As Mr. Hill's brief acknowledges, Federated has a "long history of paying workers' compensation claims involving Mr. Hill." In the fourteen years prior to Mr. Hill's most-recent claim, Plaintiffs voluntarily paid Mr. Hill over $200,000.00 in workers' compensation benefits. Moreover, Plaintiffs agreed, if Mr. Hill required more surgery in the future, to treat the injury as gradual, to open a new claim, and to pay temporary total disability compensation at the applicable rate. Additionally, although Mr. Hill's 2004 injury occurred at home, Plaintiffs initially voluntarily accepted his claim as compensable and paid temporary total disability benefits from the date of the at-home injury. He was allowed to return to work in February 2005 and given special accommodations, and when he left after only a day and a half, Plaintiffs supplied him with the necessary paperwork to file for long-term disability benefits and agreed not to count the day and a half worked against the thirteen-week out-of-work period required to receive such benefits. Based on the evidence before us, we agree that Plaintiffs have affirmatively negated the fourth element of Mr. Hill's retaliatory discharge claim by demonstrating that his claim for workers' compensation benefits was not a substantial factor in his discharge. The undisputed evidence demonstrates that no adverse action was taken against Mr. Hill until the alleged fraud was discovered, and we decline to adopt Mr. Hill's reasoning that because the fraud related to his claim, he could not legitimately be terminated for such. *See Anderson*, 857 S.W.2d at 559 (noting that lying as to previous compensation claims is a legitimate, nonpretextual, nonretaliatory reason for

---

[1](...continued)
*v. Tractor Supply Co.*, 320 S.W.3d 777, 785 (Tenn. 2010), our Supreme Court rejected application of the traditional *McDonnell Douglas* burden-shifting framework at the summary judgment stage. However, because the decision of the trial court below was issued in July 2009, we apply the summary judgment standard in effect on the date of the trial court's decision.

discharge).[2]

### C.    Entry of *"Memorandum Opinion and Order"*

Mr. Hill asserts that the trial court erred in entering the July 24, 2009 Memorandum Opinion and Order, which granted Plaintiffs' motion for summary judgment with regard to both retaliatory discharge and workers' compensation, because the order "included vol[]uminous material and findings of fact not addressed by the court" and because the court communicated only with Plaintiffs. In his brief, Mr. Hill suggests that "the Court [had] made up its mind in advance of a trial" and he implies that it merely "rubber-stamped" the lengthy order prepared by Plaintiffs. In fact, he asserts that "[t]his case has never come to trial and there has not been one word of evidence heard by a jury or the Trial Judge." As support for this assertion, he points to statements made at the summary judgment hearing:

> [Mr. Hill's counsel]: Does Your Honor want to hear me on . . . my motion for summary judgment regarding the Workers' Comp claim?

> The Court: No. I will read the briefs. I will call you with my decision. I feel like I need to look at the videos. You're alleging one thing. They're saying another. It's a part of everything in this file.

First, we again point out that Mr. Hill's workers' compensation claim is not before this Court. Furthermore, the above-cited statements do not accurately reflect the proceedings before the trial court–Mr. Hill's counsel was given ample opportunity to argue his position at oral argument. Moreover, the trial court indicated in its order that it had "thoroughly review[ed]" "the entirety of the filings in this matter[,]" that it had "carefully considered the pleadings of the parties and the attachments including the lay and medical doctor Affidavits, and records and the lay deposition testimony[,]" and that it had "viewed the lengthy surveillance on the Defendant, William Hill." Accordingly, we find no merit in Mr. Hill's

---

[2]Because Plaintiffs have successfully negated an essential element of Mr. Hill's retaliatory discharge claim by showing that his workers' compensation claim did not precipitate his discharge, we do not reach the second step of the analysis regarding fraud.

assertion that the trial court's order was without an evidentiary foundation.[3]

Pursuant to Davidson County local rule 33.01, Plaintiffs, as the prevailing party, prepared a proposed order for entry by the court, a copy of which was sent to Mr. Hill's counsel on July 17, 2009. Mr. Hill failed to object to its entry within three days, as set forth in local rule 33.02, and the order was entered on July 24, 2009. Mr. Hill claims that "[h]ad it not been for a follow-up call by [Mr. Hill's] counsel to the Circuit Court Clerk's Office on Friday, August 21, 2009, when it was discovered that an Order had been signed and filed, the time for filing a Notice of Appeal would have run on the following Monday, August 24, 2009." Although the trial court should have notified Mr. Hill of the order's entry, Mr. Hill timely filed his notice of appeal on August 24, 2009, and he alleges no harm from the delayed notification.[4] Accordingly, we will not reverse the trial court's ruling on this basis.[5]

### D. Exclusion of Affidavit of Genelle McDaniel

Following arguments on the parties' motions for summary judgment on June 26, 2009, but prior to the entry of the court's order regarding such, Mr. Hill filed a motion, on July 20, 2009, seeking to have the court consider the affidavit of Genelle McDaniel. In its order, the court indicated that it had not considered the untimely-filed affidavit, and that Mr.

---

[3]Mr. Hill also attempts to re-assert his venue argument, which has been addressed and disposed of by the Supreme Court Special Workers' Compensation Appeals Panel: "The terms of the 2003 settlement agreement, and the supplemental agreement entered into at the same time, provided the basis for virtually all of the claims made by both parties. That agreement was approved by the Circuit Court of Davidson County, and venue properly lies in that court."
***Federated Rural Elec. Ins. Exchange***, 2010 5313731, at *8-9. We will not reconsider this argument on appeal.

[4]Pursuant to Tennessee Rule of Civil Procedure 58, "[e]ntry of a judgment or an order of final disposition is effective when a judgment containing . . . the signatures of the judge and one party or counsel with a certificate of counsel that a copy of the proposed order has been served on all other parties or counsel[.]" Here, the record indicates that the order was signed by Judge Barbara Haynes and Federated's counsel, and that a copy of the proposed order was served upon Mr. Hill's counsel.

[5]The trial court clerk apparently telephoned Plaintiffs to inform them that they had prevailed and to ask them to draft an order. In his brief, Mr. Hill seems to imply that this was an improper *ex parte* communication. The Supreme Court Special Workers' Compensation Appeals Panel has previously held that although the trial court should have notified Mr. Hill that Plaintiffs had prevailed, he was effectively notified when he received the proposed order. ***Federated Rural Elec. Ins. Exchange***, 2010 WL 5313731, at *7-8. We find that Mr. Hill's delayed notification of the order's entry, like his delayed notification that Plaintiffs had prevailed in the matter, does not warrant a reversal of the trial court's order.

-13-

Hill had "provided no case law nor any rule of court or civil procedure which could support consideration of the proposed Affidavit of Genelle McDaniel by this Court." Accordingly, it struck the affidavit from the record.

On appeal, Mr. Hill claims that the trial court erred in striking the affidavit from the record, as Ms. McDaniel had previously been unavailable and her affidavit was prepared and submitted "[a]s soon as she became available[.]" However, Plaintiffs contend that Mr. Hill's delay was a "tactical maneuver" designed to withhold evidence until trial, and they point out that Mr. Hill did not attempt to file the affidavit until after he received a copy of the proposed order confirming that the trial court would grant Plaintiffs' motion for summary judgment. Mr. Hill asserts that Ms. McDaniel's affidavit "goes to the heart of the retaliatory discharge claim[.]" Specifically, he claims that Ms. McDaniel, a former Fort Loudoun employee, "indicated that [Fort Loudoun general manager] Mr. Long had railed against Mr. Hill having received workers' compensation benefits in the past . . . and that he was hostile to employees who had returned to work with accommodations and restrictions and who had filed a workers' compensation claim."

Tennessee Rule of Appellate Procedure 24(e), regarding correction or modification of the record, states that "[a]ny differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court. Absent extraordinary circumstances, the determination of the trial court is conclusive." **Tenn. R. App. P. 24(e)**. "We accord deference to the trial court's decision as to which matters are properly includable in the record, as the trial court is in the best position to determine those matters necessary to provide a fair, accurate, and complete account of the proceedings upon which the appeal is based." *Parsons v. Huffman*, No. W2007-00327-COA-R3-CV, 2008 WL 2262314, at *9 (Tenn. Ct. App. June 3, 2008) *perm. app. denied* (Tenn. Dec. 15, 2008) (citations omitted). We find no error in the trial court's refusal to include the affidavit in the record.[6]

_____

[6]Mr. Hill does not seem to argue that the trial court erred in refusing to consider the affidavit prior to the entry of its order granting summary judgment to Plaintiffs. However, insofar as his brief argues such, we find no error in the trial court's refusal to consider the untimely-filed affidavit. *See generally Jerles v. Phillips*, No. M2005-1494-COA-R3-CV, 2006 WL 2450400, at *6 (Tenn. Ct. App. Aug. 22, 2006) *perm. app. denied* (Tenn. Dec. 27, 2006) (citing *Schaefer v. Larsen*, 688 S.W.2d 430, 433-34 (Tenn. Ct. App. 1985) (A motion to alter or amend based upon newly discovered evidence is "not intended to provide a second bite at the apple for a party who did not take a motion for summary judgment seriously until the motion was granted.").

### E. Right Knee Replacement Surgery

Next, Mr. Hill contends that the record does not support the trial court's finding that Dr. Parsons offered him right knee replacement surgery prior to his at-home fall on November 29, 2004. Instead, he claims, the offer was made sometime *after* November 29.

Again, Mr. Hill contends that Plaintiffs conspired with Dr. Parsons to discharge him in order to avoid paying expensive medical benefits, specifically right knee replacement surgery. Unfortunately, Mr. Hill fails to explain the relevance of the trial court's finding to his retaliatory discharge claim, and we fail to see how Dr. Parsons' willingness to perform the knee replacement surgery after his at-home injury evidences a retaliatory motive. Accordingly, we find this issue without merit.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court. We find the remaining issues are irrelevant to the retaliatory discharge claim before this Court, and therefore we decline to address them. The case is remanded to the trial court for further proceedings regarding Mr. Hill's workers' compensation claim consistent with the opinion of the Supreme Court Special Worker's Compensation Appeals Panel. Costs are taxed to the appellant, William R. Hill, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.